UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
THE MINEOLA GARDEN CITY CO., LTD.,

                Plaintiff,        **MEMORANDUM OF**
                                     **DECISION AND ORDER**
              -against-        13-CV-05615 (ADS)(GRB)

BANK OF AMERICA, successor in interest to
UNITED STATES TRUST COMPANY OF
NEW YORK,

                Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**White & Wolnerman, PLLC**
*Attorneys for the Plaintiff*
110 E. 59th Street, 25th Floor
New York, NY 10022
        By:    David Y. Wolnerman, Esq.
                 Randolph E. White, Esq., of Counsel

**Reed Smith, LLP**
*Attorneys for the Defendants*
599 Lexington Avenue
New York, NY 10022-7650
        By:    Samuel Kadosh, Esq.
                 Seth Kean, Esq., of Counsel

**SPATT, District Judge.**

        This case concerns a dispute over a lease agreement. On September 5, 2013, the Plaintiff The Mineola Garden City Co., Ltd. (the "Plaintiff") commenced this action in New York State Supreme Court, Nassau County. On October 10, 2013, the Defendant Bank of America (the "Defendant") removed the case to this Court on the basis of diversity jurisdiction.

        Currently pending before the Court is a motion by the Defendant to compel arbitration pursuant to Section 4 of the Federal Arbitration Act (the "FAA") and to stay the proceedings

pursuant to Section 3 of the FAA. For the reasons that follow, the Court grants the Defendant's motions.

## I. BACKGROUND

The Plaintiff, a New York corporation, maintains a principal place of business in Garden City, New York. The Defendant is a national bank headquartered in Charlotte, North Carolina.

On April 1, 1996, United States Trust Company of New York ("UST"), as Tenant, and the Plaintiff as Landlord, entered into an "AGREEMENT OF LEASE" (the "Agreement") covering premises located at 1581 Franklin Avenue in Garden City, New York (the "subject Premises"). The term of the lease was fifteen years and five months, commencing on the occupancy date. Under the Agreement, UST had the option to renew the lease for two additional consecutive periods of five years each. In addition, UST was required to pay a fixed rent to the Plaintiff on the first day of each month commencing with the commencement date. UST was also required to pay operating expense escalations to the Landlord as additional rent.

In March of 2008, the Defendant acquired UST and all of its obligations under the Agreement. On March 27, 2013, the Plaintiff submitted a certified invoice to the Defendant in the amount of $289,633. The Plaintiff alleges that the invoice submitted was for the total of all costs and expenses incurred or borne by the Plaintiff with respect to the operation and maintenance of the subject Premises and the services provided to the Defendant during its time of occupancy. The Plaintiff further alleges that the Defendant never gave notice of an objection to the invoice, nor has it made any payment of any amount.

However, the Defendant contends that (1) it properly notified the Plaintiff of its objection to the invoice and (2) it is not required to pay the disputed funds to the Plaintiff. Of importance,

the Defendant contends that the instant dispute is governed by the arbitration clause in the Agreement, which can be found in Section 40B.3 of the Agreement (the "arbitration clause").

The arbitration clause provides as follows:

> Any dispute between Landlord and Tenant concerning Expenses which is not resolved by Landlord and Tenant within thirty (30) days following completion of Tenant's review of the Books and Records shall be resolved by arbitration in New York City by three (3) arbitrators, each of whom shall have at least ten (10) years' experience in the supervision of the operation and management of office buildings in Nassau County and in accordance with the Commercial Arbitration Rules of the American Arbitration Association and the provisions of this lease, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Within thirty (30) days after the resolution of such dispute, Landlord shall refund any overage found by the arbitrators to have been paid to it by Tenant.

(Def. Exh. A., ¶ 40(B)(3).) "Expenses" is defined in the Agreement as "the total of all the costs and expenses incurred or borne by Landlord with respect to the operation and maintenance of the building project and the services provided tenants therein[.]" (Def. Exh. A, ¶ 40(A)(5).)

Therefore, based on this provision, the Defendant submits that its motion to compel arbitration and stay the litigation should be granted. In this regard, the Defendant contends that the dispute between the parties is a dispute over operating expenses, which is precisely the type of dispute covered by the arbitration clause. The Defendant points out that the arbitration clause in the Agreement requires arbitration for "any dispute between the Landlord and the Tenant concerning Expenses." Emphasizing the broad scope of the arbitration provision, the Defendant contends that the Court should grant the Defendant's motion to compel arbitration and stay litigation.

However, the Plaintiff contends that the scope of the arbitration clause is limited to "overpayment issues." According to the Plaintiff, the sole purpose of the arbitration clause was

to provide a mechanism for the Tenant to recoup overpayments made by the Tenant in compliance with the Agreement's provision requiring payment of Expense statements regardless of any dispute that may exist between the parties. The Plaintiff argues that the current dispute does not fall within the scope of the arbitration clause because there was no overpayment issue in this situation.

## II. DISCUSSION

### A. Legal Standard on a Motion to Compel Arbitration

The FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Pursuant to Section 4 of the FAA, a court may "make an order directing [ ] parties to proceed to arbitration in accordance with the terms of [their] agreement [for arbitration]," provided that the making of the agreement for arbitration is not at issue. 9 U.S.C. § 4.

When resolving a motion to compel arbitration, a court must first determine whether there is a valid agreement to arbitrate between the parties. Id. "[T]he moving party has the initial burden of showing that an agreement to arbitrate exists." Dodge Hyundai of Paramus v. United Welfare Fund, Welfare Div., 11-CV-979 ARR, 2011 WL 4356373, at *3 (E.D.N.Y. Sept. 16, 2011) (citation omitted); see also Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) ("The party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made."); Rothstein v. Fung, 03CIV. 0674MGC, 2004 WL 1151568, at *1 (S.D.N.Y. May 24, 2004) ("As the moving party [seeking to compel arbitration pursuant to § 4 of the FAA], defendants bear the burden of proving written agreements obligating both plaintiffs to arbitrate."). If the court concludes that such an agreement does exist, the court must then determine whether the particular dispute before it falls

4

within the scope of the arbitration clause. Unique Woodworking, Inc. v. N.Y. City Dist. Council of Carpenters' Pension Fund, No. 07 Civ.1951(WCC), 2007 WL 4267632, at *4 (S.D.N.Y. Nov. 30, 2007). If the dispute falls within the scope of the arbitration clause, the "role of the court ends and the matter is one for arbitration." Id.

Courts must also keep in mind certain public policy concerns when deciding whether to compel arbitration. In this regard, "[t]he FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742 (2011 (citing Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 581, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008)); see also Ross v. Am. Express Co., 547 F.3d 137, 142 (2d Cir. 2008) ("We recognize that the FAA was enacted to replace judicial indisposition to arbitration, and is an expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution.") (citations and internal quotation marks omitted). The Court notes that the FAA reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC, 131 S. Ct. at 1745 (citations and internal quotation marks omitted). In fact, the Second Circuit has said that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (citation and internal quotation marks omitted).

**B. As to the Defendant's Motion to Compel Arbitration**

At an initial matter, neither the Plaintiff nor the Defendant dispute the validity of the arbitration clause contained in the Agreement. Rather, the parties only contest whether the dispute at issue here falls within the scope of the arbitration clause. Accordingly, the Court shall

5

focus its analysis on whether the scope of the arbitration clause is broad enough to cover the instant dispute.

To reiterate, the federal policy in favor of arbitration "requires the Court to construe arbitration clauses as broadly as possible." China Auto Care, LLC v. China Auto Care (Caymans), 859 F. Supp. 2d 582, 585 (S.D.N.Y. 2012) (quoting Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 19 (2d Cir.1995)) (internal brackets omitted); see also S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190, 194 (2d Cir. 1984) ("The federal policy favoring arbitration requires us to construe arbitration clauses as broadly as possible."). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Pick Quick Food, Inc. v. United Food and Commercial Workers Local 342, 952 F. Supp. 2d 494, 498 (E.D.N.Y July 10, 2013) (quoting David L. Threlkeld & Co. v. Metallgesellschaft Ltd., 923 F.2d 245, 248 (2d Cir.1991)).

In this case, the Court disagrees with the Plaintiff's contention that the arbitration clause is only limited to instances where there has allegedly been overpayment from the Tenant. In this regard, the Plaintiff points to the last sentence of the arbitration clause, which states as follows: ""Landlord shall refund any overage found by the arbitrators to have been paid to it by Tenant." (Def. Exh. A, ¶ 40(B)(3).) According to the Plaintiff, this language suggests that the arbitration clause is limited to those matters involving disputes over whether the Tenant made any overpayments.

In the Court's view, despite the Plaintiff's argument, the scope of the arbitration clause is not qualified by this last sentence. Rather, the last sentence of the arbitration clause only provides a guide to the parties in the event the resolution of their dispute involves a finding that the Tenant made overpayments and is thus, entitled to refund.

Of importance, the arbitration clause clearly states that it encompasses "[a]ny dispute between Landlord and Tenant concerning Expenses[,]" which suggests a broad scope with respect to disagreements involving Expenses. (Def. Exh. A., § 40B.3.) See, e.g., In re Arbitration Between Gen. Sec. Nat. Ins. Co. & AequiCap Program Administrators, 785 F. Supp. 2d 411, 418 (S.D.N.Y. 2011) ("As a threshold matter, arbitration provisions that specify that "any disputes" shall be determined by arbitration are typically deemed to be "broad" arbitration provisions.") (collecting cases). Moreover, the Second Circuit has held that "language excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear and . . . arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 847 (2d Cir. 1987) (citation omitted) (ellipse in original); see also Syncora Guarantee Inc. v. HSBC Mexico, S.A., 861 F. Supp. 2d 252, 257 (S.D.N.Y. 2012) (same).

Here, the Court finds that there is no "clear and unambiguous" language in the arbitration clause that would limit the scope of the arbitration clause to only those disputes that concerned overpayments. Thus, the Court rejects the Plaintiff's argument that the arbitration clause is only applicable when there is a claim by the Defendant, as Tenant, that it has overpaid the Plaintiff.

However, the Court recognizes that there is a condition attached to the arbitration clause that adds a wrinkle to this matter. In this regard, the arbitration clause only extends to disputes that are "not resolved by Landlord and Tenant within thirty (30) days following completion of Tenant's review of the Books and Records." (Def. Exh. A, ¶ 40(B)(3).) The Defendant concedes that it did not inspect the book and records because it was convinced that the Plaintiff did not have the contractual right to demand the payment listed on the invoice. Accordingly, if the Court

7

adopts a literal interpretation of the arbitration clause, the instant dispute would not fall within its scope.

Nonetheless, the Court declines to adopt a literal interpretation of the arbitration clause for the following reasons. First, a literal interpretation would render the arbitration clause meaningless. If the Tenant's inspection of the Landlord's books and records is a prerequisite to the arbitration clause, the Tenant can always avoid the arbitration clause by choosing not to inspect the Landlord's book and records. Other courts have similarly declined to adopt a literal interpretation of a contract provision in order to prevent the provision from becoming meaningless. See Folksamerica Reinsurance Co. v. Republic Ins. Co., No. 03 Civ. 6608(VM), 2004 WL 1043086, at *3 n.3 (S.D.N.Y. May 6, 2004) (holding that one of a court's goals is to avoid an interpretation that would leave contractual clause meaningless); see also Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63, 115 S. Ct. 1212, 1219, 131 L. Ed. 2d 76 (1995) (holding that a contract should be read to give effect to all its provisions).

Second, a literal interpretation of the arbitration clause would lead to absurdity. According to the Agreement, unless there is "patent computational error," the Tenant has to remit payment in full to the Landlord as specified in the Expense statement in order to gain the right to inspect the Landlord's books and records. Therefore, the Tenant could be required to make a substantial overpayment to the Landlord in order to trigger the arbitration clause. For example, if the Landlord sent the Tenant an invoice for an amount the Tenant was unable to pay, the Tenant would be foreclosed from having the dispute arbitrated. In this way, the Landlord could potentially avoid the arbitration clause all together by demanding that the Tenant make a payment that would cause the Tenant significant hardship. This literal reading would cut against the principle that contracts must be interpreted to avoid absurdity. See Saffire Corp. v.

Newkidco, LLC, 286 F. Supp. 2d 302, 308 (S.D.N.Y. 2003) ("Under traditional contract interpretation rules, a provision may not be interpreted in a manner which would render it an absurdity."); see also Medical Self Care, Inc. ex rel. Development Specialists, Inc. v. National Broadcasting Co., Inc., No. 01 Civ. 4191, 2003 WL 1622181, at *4 (S.D.N.Y. March 28, 2003) ("A contract must be construed, if possible, to avoid an interpretation that will result in an absurdity, an injustice or have an inequitable or unusual result.").

In sum, the Court finds that (1) the arbitration clause constitutes a valid agreement to arbitrate and (2) the instant dispute falls within the arbitration clause. As such, the Court grants the Defendant's motion to compel arbitration pursuant to Section 4 of the FAA.

**C. As to the Defendant's Motion to Stay This Litigation**

Pursuant to Section 3 of the FAA,

> [t]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3.

"[A] district court can exercise its discretion to stay the proceeding or can conclude that the litigation should be dismissed." Guida v. Home Sav. of Am., Inc., 793 F. Supp. 2d 611, 620 (E.D.N.Y. 2011) (citing Salim Oleochemicals v. M/V Shropshire, 278 F.3d 90, 92–93 (2d Cir. 2002)). However, "[a] decision to dismiss has implications for the speed with which the arbitration of the dispute may begin because a dismissal is reviewable by an appellate court under Section 16(a)(3) of the FAA, whereas a stay is an unappealable interlocutory order under Section 16(b)." Id. (citing Salim Oleochemicals, 278 F. 3d at 93). For this reason, "[t]he Second Circuit urges courts deciding whether to dismiss or stay litigation when referring a matter to

9

arbitration to 'be mindful of this liberal federal policy favoring arbitration agreements' and consider that '[u]nnecessary delay of the arbitral process through appellate review is disfavored.'" Id. (quoting Salim Oleochemicals, 278 F.3d at 93).

As such, "the Court believes that the more appropriate action is to stay the proceedings and compel arbitration, particularly to promote expeditious resolution of this dispute." Id. (collecting cases); see also McCaddin v. Southeastern Marine INc., 567 F. Supp. 2d 373, 385 (E.D.N.Y. 2008). Thus, the Court grants the Defendant's motion to stay this litigation pursuant to Section 3 of the FAA.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Defendant's motion to compel arbitration is granted, and it is further

**ORDERED** that the Defendant's motion to stay this litigation is granted; and it is further

**ORDERED** that the parties are directed to submit a status report within sixty days of the date of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
June 26, 2014

       _/s/ Arthur D. Spatt_
         ARTHUR D. SPATT
       United States District Judge